## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **AUDREY D. FINCH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO.:** |
| **v.** | ) | **2:07-CV-024-MHT** |
| | ) | |
| **DEPARTMENT OF MENTAL** | ) | |
| **HEALTH AND MENTAL** | ) | |
| **RETARDATION, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS DEPARTMENT OF MENTAL HEALTH AND JOHN HOUSTON'S BRIEF IN SUPPORT OF THEIR MOTION <u>FOR SUMMARY JUDGMENT</u>

The State Department of Mental Health and Mental Retardation, and John Houston, Commissioner, (hereinafter "Defendants"), hereby submit the following Brief in Support of Their Motion for Summary Judgment, seeking summary judgment on the claims asserted by the Plaintiff, Audrey D. Finch ("Finch" or "Plaintiff"). Based upon the undisputed material facts and for the reasons stated below, no genuine issue of material fact exists and Defendants are clearly entitled to judgment as a matter of law.

## I.      <u>INTRODUCTION</u>

Plaintiff alleges that she was subjected to discrimination by Defendants on the basis of race with respect to promotions, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq*. ("Title VII") and 42 U.S.C. § 1981, by and through 42 U.S.C. § 1983. (Compl., Section IV A. and B.)

Plaintiff's claims against the Department of Mental Health and John Houston, Commissioner, are based on three different positions she claims she should have been promoted to while employed by the Department of Mental Health: Habilitation Treatment Specialist (HTS), Habilitation Treatment Coordinator/ Habilitation Treatment Leader (HTC/HTL), and Administrator II. (Compl. pp. 4-7). She claims she was not promoted to these positions while lesser qualified white individuals were, in violation of Title VII and 42 U.S.C. § 1981.

Her claims against these Defendants are due to be dismissed because (1) her claims are barred by absolute immunity, (2) her claims are procedurally barred and untimely, (3) she cannot establish a *prima facie* case with regards to the HTS position, and (4) she cannot show discrimination with regard to any of the positions at issue.

## II.    STATEMENT OF UNDISPUTED FACTS

### A.    THE HTS POSITIONS

Plaintiff, who had a Bachelor's degree in Sociology, was hired by the Department of Mental Health as a Mental Health Worker at the Glenn Ireland facility in January 1986. (Compl. ¶ 8; Pl. depo I, Oct. 9, 2001, p. 14:8-10). John Justice, who had a Bachelor's degree in Psychology, was hired by the Department as a Cottage Supervisor on December 7, 1987. (Elliot decl., ¶ 8, Ex. E). In 1988, the Cottage Supervisor position was reclassified as the Habilitation Treatment Specialist position. (Elliot decl., ¶ 9). Mary Edith Moore, who also had a Bachelor's degree in Psychology, was appointed to the position of Habilitation Treatment Specialist on March 12, 1990. (Elliot decl., ¶ 8, Ex. F.) Plaintiff was appointed to the Habilitation Treatment Specialist position on January 12, 1991. (Pl. depo I, Oct. 9, 2001, Ex. 1101). Prior to becoming an Habilitation Treatment Specialist, Plaintiff had never supervised any employees at Glenn

Ireland. (Pl. depo I, Oct. 9, 2001, p. 60:11-19). On May 25, 1991, Plaintiff received her Master's degree in Counseling. (Pl. depo I, Oct. 9, 2001, p. 14:11-14).

**B.    THE HTC/HTL POSITIONS**

Plaintiff subsequently applied for a Habilitation Treatment Coordinator/Habilitation Treatment Leader ("HTC/HTL") position. Diane McCullar and Jonathan Graves also applied for HTC/HTL positions around the same time as Plaintiff. (Elliot decl., Ex. G, H). McCullar had a Bachelor's degree in Psychology and had been performing duties as an acting HTC/HTL at the time of her application. (Elliot decl., ¶ 11, Ex. G).

Graves also had a Bachelor's degree in Psychology, and had extensive supervisory experience. (Elliot decl., Ex. H.) With the exception of three years he spent as a In-Service Instructor at Glenn Ireland from 1985 until 1988, he had been in supervisory positions since 1981. (Elliot decl., Ex. H). He had previously supervised ten Mental Health Workers as a Home Manager at Glenwood Mental Health Services, and was supervising seven Vocational Instructors as a Vocational Coordinator there at the time of his application to Glenn Ireland. (Id.) Further, as Plaintiff has admitted, Graves had actually been her trainer when she was hired at Glenn Ireland in 1986. (Pl. depo I, Oct. 9, 2001, p. 86:4-6).

McCullar and Graves were both promoted to HTC/HTL positions in January 1993. (Elliot decl., Ex. F; Pl. depo I, Oct. 9, 2001, Ex. 1105). Plaintiff was notified on January 8, 1993 that she had not been promoted. (Elliot decl., Ex. C.)

**C.    THE ADMINISTRATOR II POSITION**

Plaintiff also complains that Terry Avery was promoted to an Administrator II position at Glenn Ireland over her. This position involved coordination of police, investigators, risk management, and other departments at Glenn Ireland. (Elliot decl., Ex. J). At the time of

consideration of applicants for this position, Plaintiff had only been employed by the Department of Mental Health for six years, and had only been in a supervisory position for about one year. (Pl. depo I, Oct. 9, 2001, 60:11-19). Avery, on the other hand, who was an officer in the Mental Health Department's police force with the rank of Major, had 16 years experience with the Department of Mental Health. (Pl. depo I, Oct. 9, 2001, Ex. 1109). At the time of his application he was currently supervising two Captains, six officers, and five operators. (Pl. depo I, Oct. 9, 2001, Ex. 1109). In fact, Avery had been in supervisory positions over Department employees since 1981 (Pl. depo I, Oct. 9, 2001, Ex. 1109). Avery also had extensive administrative experience, and had even assisted in reorganizing the Glenn Ireland police department in 1991. (Elliot decl., Ex. J; Pl. depo I, Oct. 9, 2001, Ex. 1109).

While the position required a degree in Business or a related field (Elliot decl., Ex. I), which neither Plaintiff nor Avery had, Avery was actively enrolled at the time in an external degree program through the University of Alabama, and had 50 hours towards his degree in Business Administration. (Pl. depo I, Oct. 9, 2001, Ex. 1109). Both Plaintiff and Avery were interviewed, but ultimately Avery was promoted to the position on July 25, 1992. (Pl. depo I, Oct. 9, 2001, Ex. 1109).

## D.    PROCEDURAL HISTORY

On July 19, 1993, 192 days after Plaintiff received notice that she was not promoted to the HTC/HTL positions, Plaintiff filed an EEOC Charge. The only issue she raised in the Charge was that the Department of Mental Health failed to promote her to the position of Habilitation Coordinator and instead filled the position with less qualified white employees. (EEOC Charge, p. 2). Plaintiff has not filed any other complaints or charges with the EEOC, or

any other government agencies. (Pl. Depo I, Oct. 9, 2001, p. 34:4-13; Pl. Depo II, Nov. 20, 2007, p. 21:3-17.)

On July 13, 1995, Plaintiff filed a Motion to Intervene in the *Crum et al., v. State of Alabama, et al.,* CV 94-T-356-N case. The intervention request was granted on January 5, 2007, and was subsequently converted into a separate lawsuit. [Doc. No. 773 of the *Crum* case]. The only specific promotion claim raised in Plaintiff's initial Complaint-in-Intervention alleged that Finch was denied promotion to the position of Habilitation Treatment Coordinator from 1993 until the filing of the complaint in 1995. (Compl. ¶ 14).

In her deposition on October 9, 2001, Plaintiff complained for the first time about not being promoted to the Habilitation Treatment Specialist or Administrator II positions.[1] (Pl. depo I, p. 48:17 – 54:7; 102:20). The first time a claim relating to the Habilitation Treatment Specialist or Administrator II positions was pled by Plaintiff was in her Amended Complaint, filed September 17, 2007. With regard to the HTS position, Plaintiff complains that she was not promoted to this position between 1986 and 1991 while several whites were. (Compl. ¶¶ 18-25). With regard to the Administrator II position, Plaintiff complains that she applied for this position in 1994 or 1995, but that Terry Avery, a white male, received the position instead of her. (Compl. ¶¶ 44-46).

### III.    SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment in its favor as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-28 (1996). In making this determination, all facts and inferences are to be viewed in a light most

---

[1] To be clear, Plaintiff was promoted to an HTS position on January 12, 1991, but complained in her deposition that she should have been promoted sooner. (Pl. depo I, Oct. 9, 2001, Ex. 1101; Pl. depo I, p. 58:23 – 59:5).

favorable to the nonmovant. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n. 2 (11th Cir. 1988)(noting that nonmovant need not be given the benefit of every inference, only every reasonable inference).  Therefore, "the moving party has the burden of demonstrating that there is no genuine issue as to any material fact, and a summary judgment is to be entered if the evidence is such that a reasonable jury could find only for the moving party."  *Hilburn v. Murata Electronics N.A., Inc.*, 181 F. 3d 1220, 1225 (11th Cir. 1999).

IV.    **ARGUMENT**

A.    **PLAINTIFF'S CLAIMS FOR DAMAGES AND HER DEMAND FOR A JURY TRIAL ARE DUE TO BE DISMISSED.**

As an intervenor in *Crum*, Plaintiff waived her right to a jury trial and any claim for compensatory or punitive damages, and as such are barred from making such claims in this matter by the doctrine of judicial estoppel and the law of the case.  The argument on this matter is contained in Defendants' Alabama State Personnel Board and Jackie Graham's Brief in Support of Motion for Summary Judgment (pp. 7 through 22), and is adopted but not reproduced here in the interest of efficiency.

B.    **PLAINTIFF'S § 1981 CLAIMS AGAINST THE DEPARTMENT OF MENTAL HEALTH ARE DUE TO BE DISMISSED AS THE DEPARTMENT IS ENTITLED TO ABSOLUTE IMMUNITY.**

Plaintiff has alleged claims of violation of 42 U.S.C. § 1981 against the Department of Mental Health by and through 42 U.S.C. § 1983.  These claims are due to be dismissed as the Department of Mental Health is a governmental entity.  Case law is clear that a governmental entity is entitled to Eleventh Amendment immunity for both damages and injunctive relief. *See, Cory v. White*, 457 U.S. 85, 90 (1982) ("We have often made it clear that the relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment."); *Miller v. King*, 384 F.3d 1248, 1264 (11th Cir. 2004) (discussing *Garrett* and *Ex*

*Parte Young* doctrine); *Cozzo v. Tangipahoa Parish Council-President Gov't,* 279 F.3d 273, 280-81 (5th Cir. 2002) (Eleventh Amendment bars suits against state agencies for money damages and injunctive relief).

Thus, all claims under 42 U.S.C. § 1981 and § 1983 against the Department of Mental Health are due to be dismissed.

### C.    PLAINTIFF'S CLAIMS AGAINST JOHN HOUSTON ARE DUE TO BE DISMISSED AS HOUSTON IS ENTITLED TO ABSOLUTE IMMUNITY

Plaintiff has sued John Houston, Commissioner of the Department of Mental Health, in his official capacity pursuant to 42 U.S.C. § 1981 through § 1983.  Houston, however, is entitled to absolute immunity from damages.

Eleventh Amendment bars claims for monetary relief and all claims for injunctive relief other than prospective injunctive relief. Plaintiff alleges that she has been denied promotions she was qualified for in favor of lesser qualified white employees because of her race.  Plaintiff, who has not been employed by the Department of Mental Health since 1996,[2] requests *inter alia,* compensatory and punitive damages, and back pay.

It is undisputed that claims for damages against an official of a State agency in his official capacity are claims against the State agency itself. *Lassiter v. Alabama A & M Univ*., 3 F.3d 1482, 1485 (11th Cir. 1993); *Carr v. City of Florence, Ala*., 916 F.2d 1521, 1525 (11th Cir. 1990); *Morgan v. State of Ala.*, 5 F. Supp. 2d at 1296.  Absent abrogation or waiver, the Eleventh Amendment bars federal claims for damages against the states, including suits brought by a state's own citizens.  U.S. Const. Amend. XI;   *see, e.g., Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc*., 506 U.S. 139, 113 S. Ct. 684, 121 L. Ed. 2d 605 (1993); *Welch v. Texas Department of Highways and Public Transportation*, 483 U.S. 468, 107 S. Ct.

---

[2] Pl. depo II, Nov. 20, 2007, p. 17:12-15.

2941, 97 L. Ed. 2d 389 (1987).  The Supreme Court has specifically held a 42 U.S.C. § 1983

claim against state governments to be barred by the Eleventh Amendment. *Quern v. Jordan*, 440

U.S. 332, 340, 99 S. Ct. 1139, 1144, 59 L. Ed. 2d 358 (1979) ("There can be no doubt, however,

that such [Section 1983] suit against the State [of Alabama] and its Board of Corrections is

barred by the Eleventh Amendment . . . .") (quoting *Alabama v. Pugh*, 438 U.S. 781, 98 S. Ct.

3057, 57 L. Ed  2d 1114 (1978)). Congress has not abrogated Eleventh Amendment immunity in

42 U.S.C. § 1983 lawsuits, thus all claims for damages against John Houston in his official

capacity are due to be dismissed.

Additionally, all claims for injunctive relief, other than that which is prospective in nature

are due to be dismissed.  As aptly described by the Eleventh Circuit in *Florida Association of*

*Rehabilitative Facilities v. State of Florida Department of Health and Rehabilitative  Services*,

225 F.3d. 1208, 122 (11th Cir. 2000):

> Under the doctrine of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441,
> 52 L.Ed. 714 (1908), there is a long and well-recognized exception
> to this rule for suits against state officers seeking prospective
> equitable relief to end continuing violations of federal law. *See*
> *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336-37 (11th
> Cir.1999) (citing *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 269,
> 117 S.Ct. 2028, 2034, 138 L.Ed.2d 438 (1997) ("We do not ...
> question the continuing validity of the *Ex parte Young* doctrine.")),
> cert. denied, 529 U.S. 1012, 120 S.Ct. 1287, 146 L.Ed.2d 233
> (2000). The availability of this doctrine turns, in the first place, on
> whether the plaintiff seeks retrospective or prospective relief. *Ex*
> *parte Young* has been applied in cases where a violation of federal
> law by a state official is ongoing as opposed to cases in which
> federal law has been violated at one time or over a period of time
> in the past. Thus, *Ex parte Young* applies to cases in which the
> relief against the state official directly ends the violation of federal
> law, as opposed to cases in which that relief is intended indirectly
> to encourage compliance with federal law through deterrence or
> simply to compensate the victim. 'Remedies designed to end a
> continuing violation of federal law are necessary to vindicate the
> federal interest in assuring the supremacy of that law. But
> compensatory or deterrence interests are insufficient to overcome

the dictates of the Eleventh Amendment.' *Summit Med. Assocs.*, 180 F.3d at 1337 (quoting *Papasan v. Allain*, 478 U.S. 265, 277-78, 106 S.Ct. 2932, 2940, 92 L.Ed.2d 209 (1986)). Therefore, the Eleventh Amendment does not generally prohibit suits against state officials in federal court seeking only prospective injunctive or declaratory relief, but bars suits seeking retrospective relief such as restitution or damages. *See Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985); *Sandoval v. Hagan*, 197 F.3d 484, 492 (11th Cir.1999) ("[I]ndividual suits that seek prospective relief for ongoing violations of federal law ... may be levied against state officials."). If the prospective relief sought is "measured in terms of a monetary loss resulting from a past breach of a legal duty," it is the functional equivalent of money damages and *Ex parte Young* does not apply. *Edelman,* 415 U.S. at 669, 94 S.Ct.at1347."

Thus, all claims for damaged and retrospective relief is barred against Defendant Houston in his official capacity.

## D.    PLAINTIFF'S CLAIMS ARE PROCEDURALLY BARRED AND UNTIMELY.

### 1.    Plaintiff's Title VII claims are procedurally barred and untimely.

It is well established that before bringing suit under Title VII, a plaintiff must file a charge with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred." 32 U.S.C. § 2000e5(e)(1). Failure to do so procedurally bars a litigant's Title VII claims. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002) (discussing that promotion claims are discreet acts over which a charge must be timely filed); *Anderson v. Twitchell,* 76 F.Supp.2d 1279, 1292 (M.D. Ala. 1999).

Plaintiff did file an EEOC charge on July 19, 1993, but only raised one issue – that the Department of Mental Health failed to promote her to the position of Habilitation Coordinator and instead allegedly filled the position with less qualified white employees. (Elliot decl., Ex. A). Her Amended Complaint, however, complains that she was wrongfully denied promotion to HTS positions between 1986 and when she finally was promoted to the position in January 1991.

9

(Compl. ¶¶ 18-26; Pl. depo I, p. 58:23 – 59:5)). The fact that she was promoted to the position in January 1991 necessarily means that she is complaining about actions that, at the latest, occurred over two years prior to the Charge she filed in July 1993. Hence, any Title VII claim pertaining to the HTS positions are time-barred.

Furthermore, Plaintiff made no reference in her charge whatsoever to her being denied promotion to these HTS positions. Therefore, a Title VII claim pertaining to the HTS positions is not only untimely, but is procedurally barred for failing to file a charge with the EEOC.[3]

Plaintiff's claim regarding the Administrator II position is similarly procedurally barred and untimely. The position Plaintiff complains of, which was filled by Terry Avery, was filled on July 25, 1992. (Pl. depo I, Oct. 9, 2001, Ex. 1109). Thus, this adverse employment action occurred a year prior to Plaintiff filing her EEOC Charge. Additionally, just as with the HTS position, Plaintiff never mentioned any issue with the Administrator II position in her 1993 charge, or at any time with the EEOC. Thus, her claim pertaining to the Administrator II position is both untimely and procedurally barred.

As noted above, the only issue Plaintiff did raise in her Charge is that the Department of Mental Health supposedly failed to promote her to the position of Habilitation Coordinator and instead allegedly filled the position with less qualified white employees. (Elliot decl., Ex. A). Plaintiff was informed on January 8, 1993 that had been denied the HTC positions. (Elliot decl., Ex. C). Any Charge of Discrimination was required to be filed within 180 days of Plaintiff's rejection, or by July 7, 1993. However, Plaintiff did not file her Charge until July 19, 2003, or 192 days after her rejection for the position. Accordingly, her Title VII claim pertaining the

---

[3] Plaintiff's promotion claim is not a continuing violation for timeliness purposes. In National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), the Supreme Court addressed the use of the "continuing violation" theory in Title VII cases. The Court determined a charge must be filed within 180 days of each discreet discriminatory act, and the Court specifically determined that promotion claims constitute discreet acts. Id. at 110, 114(emphasis added).

HTC/HTL positions are procedurally barred for failing to file a Charge within 180 days after the alleged discriminatory act occurred. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002); *Anderson v. Twitchell,* 76 F.Supp.2d 1279, 1292 (M.D. Ala. 1999).

**2.      Plaintiff's § 1981 claims are untimely.**

There are two potential statutes of limitations applicable to failure to promote claims under § 1981, depending upon whether the promotion "rises to the level of an opportunity for a new and distinct relation between the employee and the employer." *Hithon v. Tyson Foods, Inc.,* 144 Fed.Appx. 795, 799 (11th Cir. 2005) (quoting *Patterson v. McLean Credit Union*, 491 U.S. 164, 185 (1989)). If such a new relation would have been created as the result of the promotion, the applicable time period in this case would be two years. *See Id.* at 798-99. Otherwise, the applicable time period would be four years. *Id.*[4]

To determine whether a new relation has been created, courts look to whether there is a change in the chain of responsibility, the addition of new duties or increased pay. *See Rodriguez v. General Motors Corp.,* 27 F. 3d 396, 400 (9th Cir. 1994)(holding that the types of changes required by *Patterson* for a "new and distinct relation" would include changes "such as an increase in pay, the addition of supervisory duties, or a change in the chain of responsibility"); *Butts v. City of New York Dept. of Housing Preservation*, 990 F. 2d 1397, 1412 (2nd Cir. 1993)("any promotion that creates a qualitatively different relation between the employer and employee. . .likely would create a new and distinct relation giving rise to a §1981 action under *Patterson*.").  In contrast a new relation is not created where the promotion is "understood by the

---

[4] This analysis is based on the Supreme Court's determination that the limitations period is based on whether "the plaintiff's claim against the defendant was made possible by a post-1990 enactment." *Jones v. R.R. Donnelley & Sons Co.* 541 U.S. 369, 382 (U.S.,2004). If the claim was made possible by a post-1990 enactment, then the four year limitations period applies. If the claim could have been brought under the pre-1991 version, then the state limitations period would apply. *Id.* The applicable state limitations period in Alabama is two years. *Hithon v. Tyson Foods, Inc.*, 144 Fed.Appx. 795, 799 (11th Cir. 2005).

parties to be given routinely upon satisfactory job performance" or the promotion "involve[s] moving one employee from one position to another as part of a reallocation of personnel resources, not involving a substantial increase in status or responsibility." *Butts*, 990 F.2d at 1412. It is not disputed that all three positions at issue, the HTS, HTC/HTL, and Administrator II positions – involved a change in responsibility, the addition of new duties, and increased pay. (Elliot decl, ¶ 3).

> a.    **Plaintiff's § 1981 claim arising from the HTS promotions is untimely.**

Plaintiff's Complaint-in-Intervention was filed on July 13, 1995. Even if the promotions at issue did not give rise to a new and distinct relation between the employee and the employer, any promotion that occurred prior to July 13, 1991 (four years prior to Plaintiff's Complaint) is absolutely time-barred. By Plaintiff's own complaint, this would include the three HTS positions she alleges she was wrongfully denied.[5]

However, the HTS promotions (like the others) are actually governed by the shorter two-year limitations period, since it cannot be disputed that the HTS positions involved the addition of new duties, new responsibilities, and increased pay, and therefore would have created a new relation between Plaintiff and the Department of Mental Health (her employer). (Elliot decl, ¶ 3; Pl. depo I, Oct. 9, 2001, p. 60:1-10). Therefore, as noted above and explained in *Hithon v. Tyson Foods, Inc.,* 144 Fed.Appx. 795, 799 (11th Cir. 2005), the two year limitations period applies. Ignoring the fact that the HTS positions were never even mentioned in her 1995 Complaint-in-Intervention (and, in fact, were not identified until her deposition in 2001 and not pled until her Amended Complaint in 2007), the HTS promotions occurred more than two years before she filed her Complaint-in-Intervention and would still be time barred.

---

[5] As noted in footnote 1, Plaintiff was appointed to an HTS position effective January 12, 1991. (Pl. depo I, Oct. 9, 2001, Ex. 1101). Hence, any HTS positions that she alleges she should have been appointed to would have to have been prior to January 12, 1991, and therefore, well outside the limitations period.

### b.    Plaintiff's § 1981 claim arising from the HTC/HTL promotions is untimely.

While Plaintiff did raise the HTC/HTL positions in her Complaint-in-Intervention, her § 1981 claim pertaining to these positions is still untimely as these positions were filled more than two years prior to her Complaint-in-Intervention.   Plaintiff identifies two HTC/HTL positions she claims she was wrongfully denied: one that was filled by Diane McCullar and a second that was filled by Jonathan Graves.   McCullar and Graves were both promoted in January 1993. Plaintiff was notified on January 8, 1993 that she had not been promoted.  (Elliot decl., Ex. F [McCullar's promotion date]; Pl. depo I, Oct. 9, 2001, Ex. 1105 [Graves promotion date]; Elliot decl., Ex. C [letter to Plaintiff]).   As the HTC/HTL position entailed new duties, new responsibilities, and an increase in pay over Plaintiff's position at that time (Elliot decl., ¶ 3), the two-year limitations period applies.  *See Jones v. R.R. Donnelley & Sons Co.* 541 U.S. 369, 382 (U.S. 2004); *Hithon v. Tyson Foods, Inc.*, 144 Fed.Appx. 795, 799 (11th Cir. 2005). Accordingly, the limitations period for the HTC/HTL positions expired January 1995, (two years after Plaintiff was denied the promotions).   Plaintiff did not file her Complaint-in-Intervention until July 1995, six months <u>after</u> the limitations period had expired.  As such, her § 1981 claim pertaining to the HTC/HTL positions are time barred.

### c.    Plaintiff's § 1981 claim arising from the Administrator II promotion is untimely.

The position Plaintiff complains of, which was filled by Terry Avery, was filled on July 25, 1992.  (Pl. depo I, Oct. 9, 2001, Ex. 1109).  Again, as noted above, this position involved new duties, new responsibilities, and an increase in pay.  (Elliot decl., ¶ 3).  As such, the two-year limitations period applies.  *See Jones v. R.R. Donnelley & Sons Co.* 541 U.S. 369, 382 (U.S. 2004); *Hithon v. Tyson Foods, Inc.*, 144 Fed.Appx. 795, 799 (11th Cir. 2005).  Thus, any action under § 1981 was required to have been brought by July, 1994.  Ignoring the fact that

Plaintiff raised no claims pertaining this position in the Complaint-in-Intervention she filed in July 1995, did not mention any issue with the Administrator II position until her deposition in October, 2001, and did not plead any claims relating to this position until filing her Amended Complaint in 2007, Plaintiff's Complaint-in-Intervention was not filed until over a year after the two year limitations period expired. Accordingly, her § 1981 claim pertaining to the Administrator II position is time barred.

**3.      Conclusion**

As the foregoing shows, all of Plaintiff's Title VII and § 1981 claims against these Defendants are procedurally barred and untimely. Accordingly, summary judgment should be granted on all claims as to these Defendants.

**E.      IN ADDITION TO PLAINTIFF'S CLAIMS BEING PROCEDURALLY BARRED AND UNTIMELY, HER CLAIMS ALSO FAIL AS A MATTER OF LAW AS PLAINTIFF CANNOT SHOW DISCRIMINATION.[6]**

**1.      Plaintiff's claim regarding the HTS positions fails as a matter of law because she cannot establish a *prima facie* of race discrimination.**

Even ignoring the fact that Plaintiff's HTS claims are procedurally barred and untimely, summary judgment would still be proper because Plaintiff cannot establish a *prima facie* case regarding these promotions. "To establish a *prima facie* case of Title VII race discrimination in a promotional decision, a plaintiff must prove: (1) that [she] is a member of a protected minority; (2) that [she] was qualified and applied for the promotion; (3) that [she] was rejected despite these qualifications; and (4) other equally or less qualified employees who are not members of the protected minority were promoted." *Lee v. GTE Florida, Inc.,* 226 F.3d 1249, 1253 (11th Cir.

---

[6] As Title VII claims and § 1981 claims have the same requirements of proof and analytical framework, Defendants will address the claims concurrently throughout the brief. *See Standard v. A.B.E.L. Services, Inc.,* 161 F.3d 1318, 1330 (11th Cir. 1998).

2000)(citations omitted); *Alexander v. Fulton Co., GA,* 207 F.3d 1303, 1339 (11th Cir. 2000). Plaintiff cannot satisfy elements 2 or 4 with respect to the HTS positions.

One of the requirements of the HTS position is a bachelor's degree in Psychology, Special Education, Social Work, Business Administration, or Management. (Elliot decl., Ex. D). At the time, Plaintiff only had a Bachelor's Degree in Sociology.[7] (Pl. depo I, Oct. 9, 2001, p. 13:14-20). Thus, she did not meet the educational requirement of the HTS positions, whereas the comparators she points to, John Justice and Mary Edith Moore,[8] both met the requirement with degrees in Psychology. (Elliot decl., ¶ 8). Because Plaintiff was not qualified for these HTS positions while the comparators were, she cannot satisfy the second or fourth elements of the *prima facie* case with regards to these positions, and her claim must fail as a matter of law.

## 2. Plaintiff's claims regarding all three positions fail as a matter of law because she cannot establish pretext.

Plaintiff likewise cannot show that the decisions not to promote her to these positions were pretext for discrimination. "In a failure to promote case, . . . a plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the [person] who received the position [she] coveted." *Alexander v. Fulton Co.*, 207 F.3d 1303 (11th Cir. 2000). In rebutting an employer's legitimate and nondiscriminatory reason for a promotion decision, "disparities in qualifications must be of such weight and significance that no reasonable person,

---

[7] Plaintiff received her Master's Degree in Counseling on May 25, 1991. (Pl. depo I, Oct. 9,. 2001, p. 14:11-14). However, Justice became a Cottage Supervisor in 1987 (Elliot decl, ¶ 9, Ex. E). (The Cottage Supervisor position was subsequently renamed as the HTS position. (Elliot decl., ¶ 9)) Moore became an HTS on March 12, 1990. (Elliot decl., Ex. F.) Therefore, Plaintiff did not have a Master's Degree at the time of these appointments. Even if she had her Master's Degree at this time, her degree was in Counseling, which was not one of the required fields.

[8] Plaintiff also mentioned a third comparator in her Complaint and deposition, Tim "Last Name Unknown." (Compl. ¶ 22, 25). However, as noted in the Statement of Facts, Plaintiff cannot provide any information whatsoever about this person other than she believes his first name was "Tim." (Pl. depo I, Oct. 9,. 2001, p. 53:15-17). Defendants have been unable to identify any such individual. (Elliot decl., ¶ 2). Given that Plaintiff cannot actually identify this supposed comparator, she obviously has no evidence concerning his qualifications or background, whether he was a minority, or whether he was ever actually promoted to an HTS position. Accordingly, "Tim" is simply not a proper comparator.

in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Cooper v. S.Co.*, 390 F.3d 695, 732 (11th Cir. 2004)(emphasis added); *Watkins v. City of Huntsville*, 2006 U.S. LEXIS 9703 *1 (11th Cir., April 18, 2006)(applying the "reasonable person" standard as stated in *Cooper* to plaintiff's failure to hire claim once the City offered evidence that it hired the person it determined to be the best-qualified candidate); *Haley v. Potter*, 2006 U.S. LEXIS 15545 *1 (M.D. Ala., March 31, 2006)(determining the correct standard to apply in promotion is the "reasonable person" standard expressed in *Cooper*)(citing *Ash v. Tyson Foods, Inc.*, 546 U.S. ___ (2006)). Accordingly, the critical issue before this Court is not "whether the employer selected the 'most' qualified candidate, but only whether it selected the candidate based on an unlawful motive." *Denney*, 247 F.3d at 1188.

> **a.    Plaintiff cannot show that "no reasonable person" could have selected Justice or Moore over her for the HTS positions.**

In addition to the fact that, as noted above, Plaintiff did not meet the minimum qualifications for the HTS positions, she cannot present substantial evidence of pretext as she fails to establish that any disparities between her qualifications and those of Justice or Moore were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen them over her.

The weakness of Plaintiff's claim is illustrated by the fact that she herself admitted that both black and white candidates were promoted to HTS positions during the period at issue. (Pl. depo I, Oct. 9, 2001, p. 50:14-16). Further, as noted above, it cannot be disputed that both Justice and Moore possessed the required degrees, while Plaintiff did not. Plaintiff admits that she has no knowledge of Justice or Moore's education or experience. (Pl. dDepo I, Oct. 9, 2001, p. 54:14-55:11). Rather, she claims that she was more qualified, and the decision not to select her for the position was discriminatory, based only on the fact that Justice and Moore were hired

16

from outside of Glenn Ireland.  (Pl. depo I, Oct. 9, 2001, p. 54:8-13; 55:12-21; 55:22-56:5).  However, Plaintiff cannot point to any basis for her opinion that greater consideration should have been given to her over employees who were not currently working at the Glenn Ireland facility, and the position announcement does not give any consideration to this factor.  (Elliot decl., Ex. D).  Plaintiff simply cannot establish that she was more qualified than Justice or Moore based on a factor that only she considered important, especially given that she did not meet the minimum educational requirements while Justice and Moore did.

Plaintiff cannot establish that no reasonable person, in the exercise of impartial judgment, could have chosen Justice or Moore over her for the HTS positions.  As such, Plaintiff's promotion claim regarding the HTS positions fails as a matter of law.

      **b.**    **Plaintiff cannot show that "no reasonable person" could have selected McCullar or Graves over her for the HTC/HTL positions.**

Just as with the HTS position, above, to succeed on her claim of discrimination in the HTC/HTL positions, which she claims were wrongly awarded to Diane McCullar and Jonathan Graves over her, Plaintiff must show that the "disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question."  *Cooper v. S.Co.*, 390 F.3d 695, 732 (11th Cir. 2004).

      **i.)**    **The Required Master's Degree**

The HTC/HTL position announcement listed a Master's degree in Psychology, Vocational/Rehabilitation Counseling, Social Work, or Special Education as a required qualification for the position.  (Pl. depo I, Oct. 9, 2001, Ex. 1106).  Plaintiff puts great weight on the fact that neither Graves nor McCullar had the required degree.  (Pl. depo I, Oct. 9, 2001, p. 82:14-18; 86:16-19; 91:1-9; Ex. 1106).  However, it is undisputed that Plaintiff herself did not

have the required degree.  (Pl. depo I, Oct. 9, 2001, p. 84:4-14).  In fact, as Plaintiff admitted, none of the applicants for the position had the required degree.  (Pl. depo I, Oct. 9, 2001, p. 84:18-21).  It is undisputed that despite not meeting this requirement, Plaintiff was interviewed for the position, just as the others were.  (Pl. depo I, Oct. 9, 2001, p. 76:21-77:9).  The fact that none of the applicants possessed the required Master's degree cannot be considered evidence of discrimination in light of the fact that all of the applicants were treated equally in this regard.

### ii.)    Diane McCullar

Plaintiff cannot show a disparity in qualification between her and McCullar that is of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen McCullar over the her for the HTC/HTL position.  Their qualifications are actually very similar with two important distinctions.  First, while McCullar did not possess a Master's Degree in one of the required fields, she at least had a Bachelor's degree in one of the required fields, Psychology.  (Elliot decl., ¶ G).  In contrast, Plaintiff did not have a Master's or Bachelor's degree in any of the required disciplines.  Second, and most significantly, McCullar had been performing duties as an acting HTC at the time in question. (Elliot decl. ¶ 11, Ex. G). It simply cannot be said that no reasonable person, between two candidates for a position, could have decided to appoint the one who had already demonstrated herself in that role.  Plaintiff simply cannot show that no reasonable person could have selected McCullar over her for the HTC/HTL position.

### iii.)    Jonathan Graves

Plaintiff's claim with regards to Jonathan Graves fails for the simple reason that she has admitted that even in her own opinion, she was only as equally qualified as Graves, not more qualified.  (Pl. Depo I, Oct. 9, 2001, p. 86:23-84:4; 89:21-23).  The fact that even Plaintiff does

not think that she was more qualified than Graves establishes that it was not unreasonable for Graves to be selected over Plaintiff.

However, the evidence shows that Graves was, in fact, significantly more qualified than Plaintiff. Prior to her promotion to HTS in January 1991, Plaintiff had never supervised any employees at Glenn Ireland, (Pl. depo I, Oct. 9, 2001, p. 60:11-19). Graves, on the other hand, had served in supervisory positions since 1982.[9] (Elliot decl., Ex. H). He was in a supervisory position over seven employees as the Vocational Coordinator at Glenwood Mental Health Services at the time of his application for the HTS position, and prior to that had supervised ten Mental Health Workers as a Home Manager at Glenwood. (Elliot decl., Ex. H). This alone shows the great disparity between Graves's and Plaintiff's experience and qualifications. In fact, Graves was the trainer at Glenn Ireland when Plaintiff was first hired, and had trained Plaintiff to be a Mental Health Worker. (Pl. depo I, Oct. 9, 2001, p. 86:4-6). Graves was far more experienced and qualified than Plaintiff for the HTC/HTL position.

Plaintiff cannot establish that no reasonable person, in the exercise of impartial judgment, could have chosen McCullar or Graves over her for the HTC/HTL positions. As such, Plaintiff's promotion claim regarding the HTC/HTL positions fails as a matter of law.

      **c.**      **Plaintiff cannot show that "no reasonable person" could have selected Avery over her for the Administrator II position.**

Plaintiff's final complaint against these Defendants is that she should have been appointed to the Administrator II position that Terry Avery was appointed to. (Compl. ¶¶ 44-46) Just as with the HTC/HTL position above, neither Avery <u>nor</u> Plaintiff met the desired minimum educational requirements for the position, which required a four-year degree in Business or a

---

[9] With the exception of his position as an In-Service Instructor at Glenn Ireland from 1985 to 1988. (Elliot decl., Ex. H).

related field.  (Elliot decl., Ex. I).  However, the position announcement stated that "other job related experience may be substituted for all or part of the basic requirements upon approval of the Job Evaluation Committee."  (Elliot decl., Ex. I).  While Plaintiff complains that she should have received the position because she holds "a bachelor's degree in sociology, a master's degree in counseling, [and] a license as a Social Worker," none of these qualifications are actually related to the position.  (See Elliot decl., Ex. I).  Avery, on the other hand, was actively enrolled at the time in an external degree program through the University of Alabama and had 50 hours towards his Business Administration degree.  (Pl. depo I, Oct. 9, 2001, Ex. 1109).  Thus, there is no evidence that Plaintiff had taken any courses in the retired field, whereas Avery had numerous course in the field and 50 hours toward the required degree.  (Pl. depo I, Oct. 9, 2001, Ex. 1109).

Avery was also far more experienced than Plaintiff.  At the time of his appointment, Avery had 16 years experience with the Department of Mental Health, whereas Plaintiff, who was hired by the Department in 1986, only had six years experience.  (Pl. depo I, Oct. 9, 2001, Ex. 1109).  The Administrator II position involved "coordination of personnel, risk management, investigators, and police, with the responsibilities covering the community and the facility." (Elliot decl., Ex. J).  Avery was an officer in the Mental Health Department's police force with the rank of Major, and supervised two Captains, six officers, and five operators.  (Pl. depo I, Oct. 9, 2001, Ex. 1109).  In fact, Avery had been in supervisory positions over Department employees since 1981, while Plaintiff had only been in a supervisory position since 1991.  (Pl. depo I, Oct. 9, 2001, Ex. 1109; Pl. depo I, Oct. 9, 2001, p. 58:23-59:5; 60:11-19).  In other words, Avery had ten more years experience as a supervisor within the Department of Mental Health than Plaintiff.

20

Avery also had experience developing and revising Departmental policies, had extensive administrative experience, and had even assisted in reorganizing the Glenn Ireland police department in 1991. (Elliot decl., Ex. J; Pl. depo I, Oct. 9, 2001, Ex. 1109). In contrast, Plaintiff's only experience at this time was working as a Mental Health Worker for approximately six years with no supervisory responsibilities, and one year as a HTS/Cottage Supervisor.

Clearly, Plaintiff cannot establish that no reasonable person could have appointed Avery as an Administrator II over Plaintiff. Avery's experience and administrative and police background makes it perfectly clear why he was appointed over Plaintiff to a position with responsibility over the Glenn Ireland police, investigators, risk management, personnel, and other departments at the facility. Accordingly, Plaintiff's claim regarding the Administrator II position fails as a matter of law.

## V.    CONCLUSION

Plaintiff's claims against the Mental Health Department and John Houston are simply without merit and fail for a multitude of reasons. First, Plaintiff's § 1981 claims are time barred and barred by absolute immunity. Second, her Title VII claims are procedurally barred and untimely. Third, Plaintiff's claims regarding the HTS position fail as she cannot establish a *prima facie* case. And fourth, Plaintiff's claims fail as she cannot show any evidence of pretext or discrimination. In fact, Plaintiff herself admitted that she has no reason to believe that anyone involved in any of the interviews she participated in for these positions were motivated by race, or that anyone involved in the decisions pertaining to these positions were racist towards black candidates. (Pl. depo II, Nov. 20, 2007, p. 40:18-41:7; 45:16-21).

21

Accordingly, Defendants request that Summary Judgment be granted as to all of Plaintiff's claims against the Mental Health Department and John Houston, and that these claims be dismissed with prejudice.

Respectfully submitted,

/s/ Theodore P. Bell
Warren B. Lightfoot, Jr.
John B. Holmes, III
Theodore P. Bell
Attorneys for the Defendants
Department of Mental Health
    and Mental Retardation, and
John Houston, Commissioner

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
2400 Regions/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203-4604
Telephone:     (205) 254-1000
Facsimile:     (205) 254-1999
Email:         wlightfoot@maynardcooper.com
               jholmes@maynardcooper.com
               tbell@maynardcooper.com
               aavery@maynardcooper.com

Courtney W. Tarver
Tamara R. Pharrams
DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION
P.O. Box 301410
Montgomery, Alabama 36130-1410
Telephone:  (334) 242-3038

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of December, 2007, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

For the Plaintiff:

> Joseph H. Calvin, III, Esq.
> Russell W. Adams, Esq.
> Rocco Calamusa, Jr., Esq.
> WIGGINS CHILDS QUINN & PANTAZIS, P.C.
> The Kress Building
> 301 19th Street North
> Birmingham, Alabama 35203-3204

> /s/ Theodore P. Bell
> Of Counsel